UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 15-47-DLB-EBA

OHIO VALLEY ENVIRONMENTAL COALITION                                    PLAINTIFF

V.                           MEMORANDUM OPINION AND ORDER

RIVER CITIES DISPOSAL, LLC                                              DEFENDANT

\*\*\*   \*\*\*   \*\*\*   \*\*\*

**I.   INTRODUCTION**

This is a citizen suit under the Clean Air Act ("CAA") seeking declaratory and injunctive relief and civil penalties . Plaintiff Ohio Valley Environmental Coalition ("OVEC") brought suit on behalf of itself and its members, against Defendant River Cities Disposal, LLC ("River Cities") for alleged violations of ambient air quality standards contained in Kentucky statutes and regulations, as well as the CAA. (Doc. # 1).  Although couched in terms of a Motion to Dismiss, River Cities essentially asks this Court to abstain from exercising its jurisdiction, in accordance with *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), because the issues before this Court are "already being addressed by Kentucky's Energy and Environment Cabinet." (Doc. # 6-1, p. 1).  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 7604(a).

**II.   FACTUAL BACKGROUND**

In order to properly detail the facts of this particular case, the Court must first explain the mechanics of the CAA, which stands as "a model of cooperative federalism." *Ellis v.*

1

*Gallatin Steel Co.*, 39 F.3d 461, 467 (6th Cir. 2004). The CAA "requires each State to establish a state implementation plan (SIP) to limit emissions in accordance with national ambient air quality standards set by the federal EPA." *Id.* (citing 42 U.S.C. §§ 7409(b)(1), 7410(a)(1)). Additionally, "under Subtitle D of the Resource Conservation and Recovery Act ("RCRA"), states are required to develop solid waste management plans pursuant to guidelines established by the EPA." (Doc. # 6-1, p. 3 (citing 42 U.S.C. §§ 6941-6949)).

To comply with these obligations, Kentucky has developed a plan for municipal solid waste facilities, as well as an air quality plan. The EPA has approved these plans.[1] (Doc. # 6-1, p. 3). The Division of Air Quality ("DAQ"), a division of the Kentucky Energy and Environment Cabinet's ("Cabinet") Department for Environmental Protection ("DEP"), oversees Kentucky's air quality program, which encompasses monitoring, compliance, and permitting.[2] Ky. Rev. Stat. Ann. § 224.10-100 requires the Cabinet to "prescribe administrative regulations for the prevention, abatement, and control of air pollution." Pursuant to the CAA and Ky. Rev. Stat. Ann. § 224.10-100, Kentucky has established an odor standard, identified in 401 Ky. Admin. Reg. 53:010.

Solid waste facilities are subject to a multitude of statutory and regulatory conditions, including permitting,[3] management,[4] and operation requirements.[5] Foremost in the present case is 401 Ky. Admin. Reg. 47:030 § 10(2), which provides that a "solid waste site or

---

1   40 C.F.R. § 52.920, *et seq.*

2   Ky. Rev. Stat. Ann. § 224.10-020.

3   Ky. Rev. Stat. Ann. § 224.40-100; Ky. Rev. Stat. Ann. § 224.40-310; 401 Ky. Admin. Reg. 47:160.

4   Ky. Rev. Stat. Ann. § 224.43-010, *et seq.*

5   401 Ky. Admin. Reg. Ch, 47 and 48.

facility shall not violate applicable air pollution requirements" set forth in Ky. Rev. Stat. Ann. Chapter 224 or 401 Ky. Admin. Reg. Chapters 50 through 63. Thus, solid waste facilities are subject to 401 Ky. Admin. Reg. 53:010's odor standard.

The CAA "relies on three sources of enforcement authority" – first, the CAA "entrusts the EPA with primary responsibility for promulgating national ambient air quality standards;" then, States implement their own plans (SIPs), which the CAA "permits States to enforce;" and finally, if "States fail to enforce their plans, the statute authorizes federal EPA action and private enforcement actions or 'citizen suits.'" *Ellis*, 390 F.3d at 174-75. The CAA includes a citizen suit provision, 42 U.S.C. § 7604(a), which permits private individuals to bring suit "against any person ... who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation" or "(B) an order issued by the Administrator or a State with respect to such a standard or limitation." However, before bringing a citizen suit, the plaintiff must satisfy two (2) prerequisites. First, a plaintiff must provide sixty (60) days' notice of the violation to the EPA Administrator, the State in which the violation occurs, and the alleged violator. 42 U.S.C. 7604(b)(1)(A). Second, "citizens cannot commence independent suits if the EPA or the State has already commenced an enforcement action and is diligently prosecuting the violation." *Ellis*, 390 F.3d at 467 (citing 42 U.S.C. § 7604(b)(1)(B).[6]

---

6   The Sixth Circuit, in interpreting the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365, which is nearly identical to the citizen suit provision under the Clean Air act, determined that the federal trial court "committed reversible error by according the TDEC, a state *administrative agency* charged by the state legislature with supervising water quality, the status of a *court* of the United States or a State" under the terms of the statute. *Jones v. City of Lakeland, Tenn.*, 224 F.3d 518, 521 (6th Cir. 2000). For purposes of this Opinion, the Court assumes the Sixth Circuit would interpret the citizen suit provision under the Clean Air Act in the same fashion. However, notably absent from *Jones v. City of Lakeland, Tenn.*, is any discussion of *Burford* abstention.

Big Run Landfill, owned and operated by River Cities, is a permitted solid waste facility located in Boyd County, Kentucky. (Doc. # 6-2). Therefore, it is subject to the RCRA, CAA, and Kentucky's statutes and regulations promulgated pursuant thereto, including the odor standard in 401 Ky. Admin. Reg. 53:010. Between May 18, 2011 and December 17, 2013, DAQ issued Big Run Landfill approximately twenty (20) Notices of Violations, many of which were because of a "detectable odor." (Doc. # 6-7). In an effort to settle "all civil claims and controversies involving the alleged violations," River Cities and the Cabinet entered into an Agreed Order on January 28, 2014. (Doc. # 6-4, p. 10). The Agreed Order required River Cities to take certain remedial measures, including developing and submitting a Corrective Action Plan (the "Second CAP") to address the odor violations. *Id.* at 11. In addition, the Agreed Order provided that "[s]o long as Big Run is in compliance with the terms of the Agreed Order and is implementing the Second CAP, in accordance with remedial measures deadlines," the Cabinet "shall hold in abeyance civil penalties resulting from violation of 401 KAR 53:010 Appendix A, except for any violations unrelated to the remediation of the Slide or the gas collection and control system ("GCCS") or any failure to operate or maintain odor control equipment ("Other Odor Violations")." *Id.* at 13. However, the Agreed Order did require River Cities to "pay a stipulated penalty of Seven Thousand Five Hundred Dollars ($7,500) for any Other Odor Violations" until the Second CAP was completed; and further established that, after completion of the Second CAP, "during the term of this Agreed Order, Big Run shall pay a stipulated penalty of Seven Thousand Five Hundred Dollars ($7,500) for any violation of 401 KAR 53:010 Appendix A." *Id.* at 14. Lastly, the Agreed Order provided that it "shall terminate upon Big Run's completion of all requirements described in this Agreed Order." *Id.* at 20.

Since the entry of the Agreed Order on January 18, 2014, DAQ has issued River Cities an additional forty (40) Notices of Violations, thirty-four (34) of which were for a "detectable odor" in violation of 401 Ky. Admin. Reg. 53:010. In response, DAQ has assessed stipulated penalties totaling approximately Two Hundred and Thirty Thousand Dollars ($230,000). (Doc. # 6-4, p. 5-6).[7] In accordance with the Agreed Order, River Cities submitted the Second CAP to the Cabinet on April 28, 2014, which was "revised based on the Cabinet's comments and directives." (Doc. # 6-8, p. 3). On June 4, 2015, River Cities notified the Cabinet that the Second CAP's requirements had been implemented and completed, indicated it would "continue to comply with the Second CAP," and advised the Cabinet of additional corrective actions taken. *Id.*

Shortly thereafter, on June 9, 2015, River Cities filed its Permit Renewal Application with the Cabinet. (Doc. # 6-2). Pursuant to Ky. Rev. Stat. Ann. § 224.40-310(13) and 401 Ky. Admin. Reg. 47:160 § 5(4), a previously-issued permit "shall carry with it the right of successive renewal upon expiration," but the Cabinet, "in issuing a renewal, shall consider whether all conditions of the original permit and modifications of permit conditions by agreed order" have been met. After River Cities's application for permit renewal, the Cabinet provided for a public notice and comment period and held a public hearing in Boyd County[8] on August 25, 2015, pursuant to Ky. Rev. Stat. Ann. § 224.40-310(14). (Doc. # 6-

---

7    River Cities is contesting the Cabinet's August 12, 2015 assessment of stipulated penalties in the amount of $22,500.00 and has petitioned for a hearing pursuant to Ky. Rev. Stat. Ann. § 224.10-420(2) and 401 Ky. Admin. Reg. 100.10. (Doc. # 21-3).

8    Senator Robin L. Webb, of Kentucky's 18th Senate District, specifically requested that the Cabinet hold the public hearing in Boyd County to "give the citizens affected by this landfill an opportunity to present comment and receive first hand information concerning the permit renewal," and the Cabinet complied with this request. (Doc. # 6-6).

3). During that hearing, the Cabinet heard from many concerned Boyd County citizens, some in favor of and some opposed to renewing River Cities's permit. (Doc. # 14-10). The Cabinet also received written comment from Citizens of Boyd County Environmental Coalition, alerting the Cabinet that they had secured the signatures of 2,100 citizens who opposed the permitting of Big Run Landfill, and specifically requesting that the Cabinet "consider all the notices of violation for the many years, all the many residents impacted by the hydrogen sulfide odors, all the many students who are sickened during their school days, all the residents who have lost their property values, and how this nuisance has affected the quality of life of hundreds of Kentuckians." (Doc. # 6-5).

On July 13, 2015, OVEC filed this CAA citizen suit for declaratory and injunctive relief and civil penalties against River Cities for alleged "violations of an emissions standard and limitation contained in Kentucky's SIP." (Doc. #1, p. 1). OVEC claims that "River Cities has caused or allowed emissions from the Big Run Landfill and/or the attendant rail transfer facility to exceed SIP limitations on odor." *Id.* Specifically, OVEC seeks the following relief: (1) a declaration that "River Cities has violated and continues to violate the CAA," (2) an injunction prohibiting "River Cities from operating its facilities in such a manner as will result in further violations of the SIP and the CAA," (3) an assessment of "appropriate civil penalties for each daily violation of the emissions standards and the CAA," (4) an order requiring "River Cities to immediately comply with the standards and limitations of the Kentucky SIP," (5) and an order requiring "River Cities to conduct monitoring and sampling to determine any health effects of its violations, to remedy and repair any environmental contamination and/or human health issues caused by its violations." (Doc. # 1, p. 8). OVEC also requests "attorney and expert witness fees and all other reasonable expenses

incurred in pursuit of this action." (Doc. # 1, p. 8).

Since June 9, 2015 (the filing date of River Cities's Permit Renewal Application) and July 13, 2015 (the filing of this action), OVEC claims there were seven (7) additional Notices of Violations issued to River Cities. (Doc. # 1, p. 11-12).  The record in this case also demonstrates that DAQ issued six Notices of Violations of the odor standard to River Cities in September 2015 and demanded a stipulated penalty of Forty-Five Thousand Dollars ($45,000) for violations of the odor standard. (Doc. # 21-1).  As of October 14, 2015, the Cabinet's enforcement efforts continued, wherein a Hearing Officer entered an Order consolidating ten (10) administrative cases, directing River Cities and the Cabinet to engage in settlement discussions, and scheduling a status conference for January 7, 2016. (Doc. # 21-2).

### III. ANALYSIS

#### A. *Standard of Review*

This Court has a "strict duty to exercise the jurisdiction that is conferred upon [it] by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S 706, 714 (1996).  That "duty is not, however, absolute." *Id*. at 716.  Although abstention "is the exception, not the rule," the Supreme Court has held that "federal courts may decline to exercise their jurisdiction in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Id*. at 716 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).  "Despite the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts" or by state

administrative agencies. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (quoting *Colo. River*, 424 U.S. at 817). At times, "a sound respect for the independence of state action requires the federal equity court to stay its hand." *Burford*, 319 U.S. at 334.

### B. *Burford* Abstention

Under *Burford*, where "timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv.*, *Inc. v. Council of City of New Orleans* (*NOPSI*), 491 U.S. 350, 361 (1989). "While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a "potential for conflict" with state regulatory law or policy." *NOPSI*, 491 U.S. at 362. Instead, *Burford* applies when there is "a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors." *NOPSI*, 491 U.S. at 362.

River Cities claims that this Court should dismiss OVEC's Complaint pursuant to the *Burford* abstention doctrine in order to avoid undue federal interference with the Cabinet's coherent and complex state administrative processes for regulating solid waste facilities and enforcing air quality regulations. (Doc. # 6). Specifically, River Cities directs the Court's attention to River Cities's application for permit renewal and several alleged

violations of the odor regulation contained in 401 Ky. Admin. Reg. 53:010, which the Cabinet is currently considering. Thus, River Cities claims that the Cabinet will necessarily have to determine the same issues raised in OVEC's Complaint – whether River Cities has complied with the odor regulation – in both the consolidated action regarding alleged odor violations and the permit renewal application process. (Doc. # 6, p. 2). 401 Ky. Admin. Reg. 47:160 § 5(4) requires the Cabinet to "consider whether all conditions of the original permit and modifications of permit conditions by agreed order" have been satisfactorily met. Therefore, River Cities asserts that this Court should abstain from exercising jurisdiction pursuant to *Burford*.

In response, OVEC argues that River Cities's Motion must be denied because the "plain language" of the CAA clearly establishes that *Burford* abstention "does not apply to federal citizen suits that seek to enforce an unambiguous emission standard, such as the odor limitation" at issue in the present case. (Doc. # 13, p. 1-2). Alternatively, OVEC claims that "even if abstention could potentially apply," this Court should not abstain because there is no potential for this suit to conflict with Kentucky's permitting determination. *Id*.

First, the Court will examine OVEC's primary argument - that *Burford* abstention does not apply to or limit the availability of citizen suits under the CAA because Congress expressly provided for only two (2) prerequisites before bringing a citizen suit: (1) sixty (60) days' notice and (2) the absence of any civil enforcement action in state or federal court by the EPA or the State. (Doc. # 13, p. 6). OVEC claims that "by imposing only these two conditions ... Congress rejected Defendants' theory that there are any other limitations on the filing of citizen suits." *Id.* at 1,7. OVEC further asserts that "[a]bstaining from a CAA citizen suit under *Burford* would effectively rewrite the CAA to add a new judicially-created

9

exception." *Id.*

Upon review of Sixth Circuit case law, OVEC's argument is misplaced. In *Ellis v. Gallatin Steel Co.*, 390 F.3d 461 (6th Cir. 2004), the Sixth Circuit considered *Burford* abstention in the context of CAA citizen suits. Specifically, the plaintiffs in *Ellis* argued that the district court erred by dismissing its CAA citizen suit. However, after examining that argument, the Sixth Circuit determined that *Burford* abstention "appl[ied] with equal force" to CAA citizen suits and affirmed the district court's dismissal of plaintiff's claim. *Ellis*, 390 F.3d at 480 (citing *Coal. for Health Concern v. LWD, Inc.*, 60 F.3d 1188, 1194-95 (6th Cir. 1995). Other federal district courts have also applied abstention doctrines to citizen suits under the CAA. *See e.g. Kopacz v. Hopkinsville Surface and Storm Water Util.*, 714 F. Supp.2d 682 (W.D. Ky. 2010) (finding *Colorado River* abstention was warranted with regard to property owners' claim that city, utility, and contractor violated CAA and state law during construction project); *Coal. for Clean Air v. VWR Int'l, LLC*, 922 F. Supp.2d 1089 (E.D. Cal. 2013) (*Colorado River* abstention applied to environmental and labor organizations' CAA action in federal district court alleging company violated air district rule in California's SIP); *Jamison v. Longview Power, LLC*, 493 F. Supp. 2d 786 (N.D. W. Va. 2007) (*Burford* abstention was appropriate in property owners' CAA citizen suit against power company, alleging lack of valid permit for plant construction).

Because Sixth Circuit precedent has established that abstention doctrines, including *Burford* abstention, do apply to CAA citizen suits, the Court must reject OVEC's argument that "the fact that Kentucky may be conducting administrative proceedings related to Defendant's landfill permit or to enforcement of the odor standard in the SIP are simply irrelevant." (Doc. # 13, p. 8). In fact, the issues and proceedings before the Cabinet are

highly relevant to whether this Court should abstain under *Burford.* Accordingly, this Court must now consider whether "a sound respect for the independence of state action requires the federal equity court to stay its hand" and abstain from exercising jurisdiction over the instant action. *Burford*, 319 U.S. at 334.

Essentially, the *Burford* abstention doctrine can be distilled into four (4) elements: (1) the availability of timely and adequate state-court review, (2) a request for equitable relief, (3) the existence of a complex state regulatory regime, and (4) either "difficult questions of state law bearing on policy problems of substantial public import" *or* the potential for disruption of "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361.

Here, the first three elements are easily satisfied. Timely and adequate state-court review of the Cabinet's action or inaction is available, despite OVEC's claims to the contrary.[9] If OVEC or its members are aggrieved by an action of the Cabinet, they can challenge such action in the Franklin County Circuit Court. Ky. Rev. Stat. Ann. § 224.10-420(2); Ky. Rev. Stat. Ann. § 224.10-470.; 401 Ky. Admin. Reg. 47: 140 § 11. Furthermore, to the extent that OVEC's members have sustained injuries, they can bring a state-law nuisance action against River Cities.[10] The second element is also met; OVEC

---

9   Doc. # 13, p. 10 ("First, and most simply, the *Burford* doctrine cannot apply because there is no state forum available to review Plaintiffs' claims.").

10  Under Kentucky law, a "nuisance claim has two elements: (1) the reasonableness of the defendant's use of his property, and (2) the gravity of harm to the complainant." *Louisville Ref. Co. v. Mudd*, 339 S.W.2d 181, 186 (Ky. 1960). There are two types of nuisances: public and private. A private nuisance "affects an individual or a limited number of individuals," while a public nuisance "affects the public at large." *W.G. Duncan Coal Co. v. Jones*, 254 S.W.2d 720, 723 (Ky. 1953).

seeks a declaration and injunction -the quintessential forms of equitable relief.[11] Third, a complex state regulatory regime exists. Kentucky "'has enacted and is operating its own authorized program' under the Clean Air Act and 'is attempting to establish a coherent policy'" regarding solid waste facilities and air quality regulations, and has "provided a scheme for administrative and judicial review" of DAQ's permitting and enforcement decisions. *Ellis*, 390 F.3d at 480; *see also* 401 Ky. Admin. Reg. 53:010; Ky. Rev. Stat. Ann. § 224.10-420(2); Ky. Rev. Stat. Ann. § 224.10-470.

The fourth element – whether there is a potential for disruption of the State's coherent policy with respect to a matter of substantial public concern, or there are difficult questions of state law bearing on policy problems – requires more attention. OVEC claims that this fourth factor precludes abstention. In regards to the existence of "difficult questions of state law," OVEC argues that none exist because they are seeking to enforce an "unambiguous, EPA-approved SIP provision that imposes a federally-enforceable odor standard" and "Kentucky is not reconsidering or revising that standard in any pending administrative proceeding." (Doc. # 13, p. 12). OVEC also asserts that "because this is a straightforward citizen suit to enforce an unambiguous emission standard, allowing the suit to go forward would not disrupt Kentucky's effort to establish a coherent policy regarding the management of solid waste." *Id.* Furthermore, OVEC claims that "this Court compelling Defendant to cease violating the odor standard" would "not interfere with the establishment of a coherent state policy," but instead would "further the state's established policy [to]

---

11  The fact that OVEC seeks monetary damages in the form of civil penalties does not alter the Court's analysis because the recovery of civil penalties under the CAA "first requires a 'declaration' or determination" that the Clean Air Act and/or Kentucky's SIP has been violated. *See e.g. Fair Assessment In Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981).

prevent noxious odors form sources like Defendant's landfill." *Id.* at 13.

To examine the potential for disruption of Kentucky's complex state regulatory regime for solid waste facilities and air quality, the Court must determine what issues are actually before the Cabinet. In evaluating River Cities's application for permit renewal, the Cabinet is required to "consider whether all conditions of the original permit and modifications of permit conditions by agreed order" have been met. Ky. Rev. Stat. Ann. § 224.40-310(13); 401 Ky. Admin. Reg. 47:160 § 5(4). Therefore, the Cabinet will necessarily be considering River Cities's compliance with the odor standard, which is required by 401 Ky. Admin. Reg. 47:030 § 10(2), when determining whether to renew River Cities's permit. This issue was also the subject of the January 28, 2014 Agreed Order, and the entire purpose of the Second CAP. In addition, River Cities has been assessed a multitude of alleged odor violations, which are the subject of a consolidated administrative proceeding before the Cabinet. (Doc. # 21-2).

In this case, there is a substantial potential for disruption of the Cabinet's permitting and enforcement determinations – the exact situation where *Burford* counsels abstention. Although OVEC contends that "Kentucky regulators continue to record violations" but have failed to initiate "any civil or criminal enforcement actions filed in state or federal court," there appears to be a flurry of activity at the Cabinet. (Doc. # 13, p. 4). The record demonstrates that the Cabinet is considering River Cities's permit renewal application (Doc. # 6-2), conducting public hearings, and considering public comments with respect to alleged odor violations. (Docs. # 6-5; 14-1; 14-10). Furthermore, DAQ has been actively enforcing odor violations by assessing and demanding stipulated penalties totaling over Two Hundred Thousand Dollars ($200,000), and administrative hearings and proceedings

regarding alleged odor violations are ongoing. (Docs. # 6-9; 6-10; 21-1; 21-2).

In *Coalition for Health Concern*, the Sixth Circuit considered a citizen suit under RCRA, where plaintiffs' allegations were "based on assertions that the Secretary [of the Kentucky Cabinet for Natural Resources and Environmental Protection] ... failed to apply or misapplied his lawful authority under Kentucky law and under RCRA concerning the issuance" of a permit. The Sixth Circuit determined it was "clear ... that Kentucky has an overriding interest in the protection of its environment from the effects of unregulated hazardous waste as indicated by its enactment of a broad statutory scheme and review process governing the issuance and approval of permits for hazardous waste facilities." *Coal. for Health Concern*, 60 F.3d at 1194.  In addition, the Sixth Circuit noted that Plaintiffs' claims "could not arise in isolation from state law issues" and were not "premised solely on alleged violation of federal law." *Id*. Instead, plaintiffs' claims sought "declaratory and injunctive relief for alleged violations of *state* and federal RCRA requirements." *Id*. Therefore, the Sixth Circuit held that plaintiffs' claims could not be considered "without interfering with Kentucky's policies" for hazardous waste disposal, and reversed the district court because it should have dismissed plaintiffs' claims under *Burford*. *Id*. at 1195.

The Sixth Circuit relied upon and expanded *Coalition for Health Concern* nine years later in *Ellis*. Instead of the RCRA, *Ellis* dealt with a citizen suit under the CAA, challenging Kentucky DAQ's permitting decision.  The Sixth Circuit found that the "reasons given by *Coalition for Health Concern* for applying *Burford* abstention appl[ied] with equal force" in *Ellis*. *See* 390 F.3d at 480.  Because Kentucky had enacted and was operating "its own authorized program under the Clean Air Act" and "was attempting to establish a coherent policy under its law," the Sixth Circuit again determined that "federal review ... would be

disruptive of Kentucky's efforts to establish a coherent policy' with respect to PSD permitting of emitting facilities." *Id.* (internal citations omitted). Specifically, the Circuit held that federal review would be particularly disruptive because the plaintiffs' "claims boil[ed] down to allegations that the Kentucky agency 'failed to apply or misapplied its lawful authority under Kentucky law and under'" the CAA in making permit decisions, which "would require the district court to revisit earlier decisions made by" the DAQ. *Id.* at 480-481.

Similarly, OVEC's claims could not "arise in isolation from state law issues" and "boil down to allegations that the Kentucky agency 'failed to apply or misapplied [its] lawful authority under Kentucky law and under' the Clean Air Act" by failing to do more with respect to River Cities's alleged odor violations. *Ellis*, 390 F.3d at 481 (citing *Coal. for Health Concern*, 60 F.3d at 1195). As the Sixth Circuit declared in *Ellis*, "second-guessing" of the EPA's or the Cabinet's "assessment of an appropriate remedy ... fails to respect the statute's careful distribution of enforcement authority among the federal EPA, the States and private citizens, all of which permit citizens to act where" the EPA or the State "has 'failed' to do so, not where" the EPA or the State "has acted but has not acted aggressively enough in the citizens' view." *Ellis*, 390 F.3d at 477 (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 61 (1987)). The fact that *Ellis* and *Coalition for Health Concern* dealt specifically with "second-guessing" and "revisiting" the Cabinet's permitting decision does not make those cases any less instructive in the instant action. The principles counseling abstention remain the same, whether applied to a permitting decision or the enforcement and permit renewal decisions at issue in this case.

If this Court were to consider OVEC's claims and rule in its favor, this Court would declare that River Cities has violated and continues to violate the CAA, enjoin River Cities from operating its facilities in a manner as will result in further violations of the SIP and the CAA, assess civil penalties for violations, order River Cities to immediately comply with the standards and limitations of the SIP, order River Cities to conduct monitoring and sampling to determine any health effects of its violations, and further order River Cities to remedy and repair any environmental contamination and/or human health issues caused by its violations. The issues involved in OVEC's claims are *exactly* the same issues before the Cabinet. Therefore, "federal review at this juncture would be disruptive of Kentucky's efforts to establish a coherent policy" with respect to solid waste facilities and air quality standards. *Coal. for Health Concern,* 60 F.3d at 1194; *see also Ellis*, 390 F.3d at 480.[12]

Finally, the Court rejects OVEC's argument that this citizen suit only seeks to "further" Kentucky's policies. In *Ellis*, the Sixth Circuit disposed of a similar assertion, where plaintiffs argued "their claim 'supports' rather than 'attacks' the state decisions." *Ellis*, 390 F.3d at 481. The Sixth Circuit determined that contention was of "little moment" because the plaintiffs' claim "asked the district court to disagree" with DAQ's decision. As

---

12  Not only would federal review at this juncture be disruptive of Kentucky's efforts to establish a coherent policy with respect to solid waste facilities and air quality standards, but the resolution of OVEC's claims are likely to involve difficult questions of state law. River Cities has indicated it intends to challenge the Cabinet's method for measuring and determining whether there has been an odor violation. Specifically, River Cities claims that "with the exception of odor and hydrogen sulfide, the Cabinet has prescribed by regulation the method of measurement for every ambient air quality standard in 401 KAR 50:015." (Doc. # 14, p. 5). Thus, River Cities alleges, the Cabinet's failure to prescribe by regulation a method to measure odor gives rise to the "question of whether a properly prescribed method to measur odor exists, and whether the Cabinet is prohibited by law from implementing a methodology to measure odor via internal policy instead of by regulation" in accordance with Kentucky's administrative law scheme established in Ky. Rev. Stat. Ann. Chapter 13A. *Id.* (citing Docs. # 14-7; 14-8). Thus, Burford's other concern – difficult questions of state law – is likely present here as well.

the Sixth Circuit suggested in *Ellis*, if OVEC "truly 'supported' the state agency's ... decisions, they would have had little if any reason for bringing this claim." *Id.* Accordingly, this Court finds that *Burford* abstention is appropriate in this case and OVEC's Complaint must be dismissed without prejudice.

## IV. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that Defendant River Cities Disposal, LLC's Motion to Dismiss (Doc. # 6) Plaintiff Ohio Valley Environmental Coalition's Complaint is **granted**.

**IT IS FURTHER ORDERED** that this matter be, and is, hereby **stricken from the Court's active docket**.

This 29th day of March, 2016.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\Opinions\Ashland\15-47 MOO.wpd